RECEIVED
IN ALEXANDRIA, LA
JUN 3 0 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **UNDREA CARNELLE SCOTT** | **CIVIL ACTION NO. 05-0237-M** |
| **VS.** | **SECTION P** |
| **UNION PARISH DETENTION CENTER** | **JUDGE JAMES** |
| | **MAGISTRATE JUDGE KIRK** |

## REPORT AND RECOMMENDATION

Before the court is the civil rights (42 U.S.C. §1983) complaint of pro se plaintiff Undrea Carnelle Scott filed in forma pauperis on February 1, 2005. Plaintiff is an inmate in the custody of the Louisiana Department of Public Safety and Corrections; he is incarcerated at the Union Parish Detention Center (UPDC), Farmerville, Louisiana. He complains of conditions of confinement and delayed or inadequate medical care.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.

## STATEMENT OF THE CASE

On March 11 and 18, 2004, plaintiff's dormitory at UPDC was painted. Plaintiff was born with a condition he calls "droopy eye lids." Years ago, he had surgery to correct this condition. He claims that the fumes from the paint aggravated this condition and resulted in him suffering from headaches and pain in his eyes. Plaintiff requested medical attention on March 14 and again on March 17, 2004. On March 23, 2004 he was examined by the prison nurse who gave him pain relievers and allergy/sinus medication.

Plaintiff requested medical attention again on April 1 and April 4, 2004. On April 5 he

was again examined by the nurse who made an appointment for plaintiff to be examined by a physician.

On April 12, 2004 plaintiff sent in an emergency medical request which was rejected.

On April 21, 2004 plaintiff's eye became swollen. He submitted another medical request on April 29, 2004. On May 10, 2004 plaintiff was examined by the nurse. On June 7, 2004 plaintiff was transported to the LSU-Monroe hospital, however, he was not examined by the staff there.

On August 10, 2004 plaintiff submitted another medical request. On October 22, 2004 his eye became swollen again. On October 24, 2004, his other eye became swollen.

On December 9, 2004 plaintiff returned to LSU-Monroe and was examined by a physician. The physician advised plaintiff that his left eye "had dropped some and if they continue to hurt come back and he'll do surgery."

Plaintiff submitted another medical request on December 15, 2004. On December 17, 2004 he was examined by a nurse who agreed to set up an appointment for plaintiff at an eye clinic in Shreveport.

Plaintiff submitted another medical request on January 10, 2005. On January 11 he was examined by a nurse who provided him with over-the-counter pain medication for his headaches.

On March 14, 2005, plaintiff was awakened at 3:35 a.m. for breakfast. As he was waiting in line, he began to feel dizzy and ultimately, he fainted. He was transported to a nearby hospital where he was examined. The hospital staff suggested that this fainting spell may have been caused by having gotten up too fast from bed. Plaintiff disagreed with this diagnosis and contends that the spell was caused by his exposure to paint fumes.

Plaintiff has named no defendants. He has not requested specific relief. He admits that the UPDC has an administrative remedies procedure, and he admits that he did not file a grievance with the UPDC administration because he "...was unaware that I had to file an ARP with this facility regarding my situation." [Doc. 1, Paragraph II]

## LAW AND ANALYSIS

The Civil Rights of Institutionalized Persons Act, 42 U.S.C. §1997e, was amended by the Prison Litigation Reform Act (PLRA). As amended, §1997e(a) makes the exhaustion requirement mandatory in prison conditions cases. Section 1997e(a) provides,

> (a) Applicability of Administrative Remedies – No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Further, §1997e(h) defines "prisoner" for purposes of this section to include either pre-trial detainees or persons convicted of crime.[1]

This is a prison condition case, exactly the type of case which can best be resolved by the prison officials without resort to judicial action. Plaintiff is obviously aware of the administrative remedy procedure since he acknowledged the existence of such procedures at the UPDC. [See Doc. 1, Paragraph II] Yet, clearly he did not even attempt to resolve his grievance by properly utilizing the administrative remedy procedure available through UPDC before filing this suit.

Under current law, plaintiff must exhaust the administrative remedy procedure before

---

[1] (h) "Prisoner" defined: As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.

proceeding herein. The statute provides for no exceptions.[2] The statute precludes any further action on his claims until plaintiff has fully exhausted the administrative remedy procedure. See also *Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir. 1998)(§1997e(a) "plainly requires that administrative remedies be exhausted before the filing of a §1983 suit, rather than while the action is pending..." "[t]o hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation."); *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998)(dismissal for failing to exhaust administrative remedies is justified "as a deterrent to premature filing by...other potential litigants, thus serving the Congressional purpose of providing relief from frivolous prisoner litigation..." and "[b]y choosing to file and pursue his suit prior to exhausting administrative remedies as required, [the plaintiff] sought relief to which he was not entitled--that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures.").

Accordingly,

**IT IS RECOMMENDED** that plaintiff's civil rights action be **DISMISSED WITHOUT PREJUDICE** for failing to exhaust available administrative remedies prior to the filing of suit as mandated by 42 U.S.C. §1997e.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and

---

[2] See also *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002), "... we hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. (citation omitted)"

recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** See *Douglas v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers at Alexandria, Louisiana, this 30th day of June, 2005.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE